UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL S. GRIFFIN,                  :
                                    :CIVIL ACTION NO. 3:11-CV-924
          Plaintiff,                :
                                    :(JUDGE CONABOY)
          v.                        :
                                    :
RUSSELL WALBERT, et al.,            :
                                    :
          Defendants.               :
                                    :

_____

## MEMORANDUM

Here we consider the two motions to dismiss pending in this case: Motion of Defendant Russell Walbert to Dismiss (Doc. 51), and Defendant Berks County Assistant District Attorney Howard's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 53).  Both motions seek dismissal of Plaintiff's Amended Complaint (Doc. 49).  For the reasons discussed below, the motions are granted.

## I. Background

The background of this case was set out in the Court's Memorandum and Order issued on October 7, 2007.  (Doc. 42 at 1-12.) Plaintiff's Amended Complaint (Doc. 49) contains an "Introductory Statement" is basically a conclsuory summation of his case.  (Doc. 49 at 1.)  Plaintiff also states that "all factual averments in the original complaint are incorporated herein by reference."[1]  (Id.)

_____

[1]  This method of pleading does not conform to either the Federal Rules of Civil Procedure or the Local Rules of Court of the Middle District of Pennsylvania.

Plaintiff's Amended Complaint contains two counts: Count I, "Plaintiff against the Defendants Walbert and Howard for violating Daniel Griffin's 4th Amendment Rights" (Doc. 49 at 2); and Count II, "Plaintiff against Defendant Harding for the Violation of Plaintiff's 4th Amendment Right to Be Free of Excessive Force While Being Taken into Custody" (*id.* at 5).

Because Count I is the only count at issue in the pending motions to dismiss, here we provide only a brief recitation of the facts related to the claims contained in Count I of Plaintiff's Amended Complaint. Plaintiff's Amended Complaint contains minimal factual averments. Therefore, most background information is derived from other documents.

According to Plaintiff's Amended Complaint, Defendant Walbert caused Plaintiff to be arrested on or about May 14, 2009. (Doc. 49 ¶ 10.) Plaintiff's Complaint establishes that the event which triggered the events about which Plaintiff complains was a traffic stop in which Defendant Walbert, a police officer in Fleetwood Borough, Berks County, Pennsylvania, stopped Plaintiff in Berks County for a "purported traffic violation" and Plaintiff told Defendant Walbert that he was an off-duty municipal police officer. (Doc. 1 ¶ 15.) (Plaintiff does not state the date of the Berks County traffic stop.)

At some point after the Berks County traffic stop, Defendant Walbert made an inquiry to Defendant Keith Keiper, Chief of Police

of Kingston Borough, Pennsylvania.  (*Id.*)  (Kingston is the
municipality to which Plaintiff alleged law enforcement
attachment.)  Plaintiff maintains that following Defendant
Walbert's inquiry, Defendant Keiper, Defendant Paul Keating
(Kingston's Municipal Manager), and Defendant Donald Crane (a
police captain employed by the Wilkes-Barre, Pennsylvania, Police
Department) developed a plan to arrest him on charges of
"impersonating a police officer" and "false identification to law
enforcement."  (*Id.*)  Plaintiff states at the time he was no longer
a police officer and no longer a public employee.  (Doc. 49 ¶ 11.)

Plaintiff asserts that "on or about this time, upon
information and belief" Berks County Assistant District Attorney
Howard decided to prosecute Plaintiff in response to pressure from
the Pennsylvania Attorney General's Office.  (Doc. 49 ¶ 12.)
Plaintiff adds that Defendant Walbert was aware of this pressure,
admitting to Plaintiff the matter "was out of my hands now," and
yielded to Defendant Howard's advice to bring charges.  (*Id.*)
Asserting that Defendant Howard admitted that the Berks County
District Attorney had directed Plaintiff's prosecution, Plaintiff
maintains this led to Defendant Howard's advice to Defendant
Walbert "in turn because of pressure from the Atty. Gen's office."[2]

_____

[2]  The Berks County District Attorney is not a defendant in
this case.

3

(*Id.* ¶ 14.)

Plaintiff explains that the then Attorney General, Tom Corbett, was a personal friend and political ally of Mayor Haggerty of Kingston, and Plaintiff "believes that Haggerty's anger at Griffin, for his successful support of Lisa Baker who defeated Haggerty in a state Senate race, cause the Atty. Gen's office, presumably at Haggerty's request, to become involved in the unlawful plans to prosecute Griffin.  An additional reason was Griffin's past FOP advocacy."  (Doc. 49 ¶ 15.)

Asserting that all charges were terminated in his favor, Plaintiff states that they were dismissed in part by a judicial response to a writ of habeas corpus and then by a judicial response after hearing all remaining evidence against him.  (Doc. 49 ¶¶ 17-18.)  In another filing, Plaintiff states that the false identification charge was dismissed in a habeas corpus petition and the impersonation charge was terminated after a trial which took place in March 2010.  (Doc. 56 ay 2.)

Plaintiff does not specifically state in his Amended Complaint that he was arrested pursuant to a warrant and that Defendant Walbert was the affiant, nor did he do so in his Complaint. However, despite the less-than-clear pleading style of the Complaint, we concluded in our previous Memorandum and Order that Plaintiff had been arrested pursuant to a warrant and that Defendant Walbert had provided the affidavit of probable cause.

4

(Doc. 42 at 22.)[3]  With his Amended Complaint, Plaintiff does not dispute this finding.

## II. Discussion

### a. Motion to Dismiss Standard

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937

---

[3]  This finding was based on information contained in *Commonwealth v. Griffin*, 24 A.3d 1037 (Pa. Super. 2011), a related Pennsylvania case.  In the Court's October 7, 2011, Memorandum and Order (Doc. 42), we included facts contained in the Superior Court opinion primarily because the issue of collateral estoppel was raised by some Defendants in their motion to dismiss and they attached the Superior Court opinion to their brief.  (*See* Docs. 26, 26-1.)  Plaintiff acknowledged the relationship between the cases but argued against estoppel.  (Doc. 28 at 3, 7-8.)  He did not argue that the Superior Court's factual findings were in error.

Beyond the collateral estoppel issues raised, the Court did not rely upon the Superior Court's factual findings except to confirm that Plaintiff had been arrested pursuant to a warrant where that appeared to be the case from Plaintiff's Complaint and opposition briefs but was not absolutely clear.  (Doc. 42 at 22, 23 n.6.)

We again include the warrant information in the Background section of this Memorandum as it is of central importance to the analysis of the issues raised and because Plaintiff acknowledges in Plaintiff's Brief in Opposition to Defendant Walbert's Motion to Dismiss Plaintiff's Amended Complaint that Defendant Walbert is the affiant who charged him.  (Doc. 57 at 2.)  Given the circumstances of this case, use of this information in reviewing this Motion to Dismiss is consistent with Third Circuit findings regarding documents properly considered with a Motion to Dismiss.  *See*, *e.g.*, *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426-27 & n.7.

(2009).

> "[T]o survive a motion to dismiss, a
> complaint must contain sufficient factual
> matter, accepted as true to 'state a claim
> that relief is plausible on its face.'"
> *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550
> U.S. at 570).  The Court emphasized that
> "only a complaint that states a plausible
> claim for relief survives a motion to
> dismiss."  *Id.* at 1950.  Moreover, it
> continued, "[d]etermining whether a complaint
> states a plausible claim for relief will . .
> . be a context-specific task that requires
> the reviewing court to draw on its judicial
> experience and common sense."  *Id.* (citation
> omitted).

*McTernan,* 577 F.3d at 530.  The Circuit Court discussed the effects

of *Twombly* and *Iqbal* in detail and provided a road map for district

courts presented with a motion to dismiss for failure to state a

claim in a case filed just a week before *McTernan*, *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part
> analysis.  First, the factual and legal
> elements of a claim should be separated.  The
> District Court must accept all of the
> complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. [*Iqbal*,
> 129 S. Ct. at 1949.]  Second, a District
> Court must then determine whether the facts
> alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible
> claim for relief."  *Id.* at 1950.  In other
> words, a complaint must do more than allege a
> plaintiff's entitlement to relief.  A
> complaint has to "show" such an entitlement
> with its facts.  *See Philips* [*v. Co. of
> Alleghany*], 515 F.3d [224,] 234-35 [(3d
> Cir.2008 )].  As the Supreme Court instructed
> in *Iqbal*, "[w]here the well-pleaded facts do
> not permit the court to infer more than the
> mere possibility of misconduct, the complaint

6

> has alleged--but it has not 'show[n]'--'that
> the pleader is entitled to relief.'" *Iqbal*,
> 129 S. Ct. at 1949.  This "plausibility"
> determination will be "a context-specific
> task that requires the reviewing court to
> draw on its judicial experience and common
> sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts.  In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

**b.  *Defendants' Motions to Dismiss***

Defendants Walbert and Howeard seek dismissal of all claims against them.  (Docs. 51, 53.)  For the reasons discussed below, we grant Defendants' motions.

**1.   Procedural Compliance**

Defendant Walbert asserts that Plaintiff's Amended Complaint should be dismissed based on Plaintiff's failure to follow the Court's Order allowing amendment and his failure to follow applicable pleading rules.  (Doc. 52 at 3.)  Although there is some merit to Defendant Walbert's arguments, we will not dismiss the Amended Complaint on procedural grounds but will proceed with a merits analysis.

7

**2.   Count I - Fourth Amendment Claim**

With this Count, Plaintiff asserts Defendants Walbert and Howard "maliciously prosecuted him for unlawful reasons in violation of his 1st Amendment rights and without probable cause." (Doc. 49 at 3, ¶ 8.)  Plaintiff also asserts that "Defendant Walbert caused the plaintiff to be falsely arrested and unlawfully seized."  (*Id.* at 3, ¶ 10.)  Plaintiff identifies the question of the propriety of his arrest and prosecution, at this stage of the proceedings, to be "whether plaintiff has pled facts to show that the defendant lacked probable cause."  (Doc. 57 at 10.)  We agree with Plaintiff's assessment of the question at issue--whether probable cause existed for Plaintiff's arrest is a central element in both his false arrest and malicious prosecution claims. Therefore, whether Plaintiff has sufficiently pled that there was a lack of probable cause is our initial inquiry.

The Fourth Amendment to the United States Constitution provides that people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  It is well-established that the Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause."  *Orsatti v. N.J. State Police*, 71 F.3d 480, 482

(3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)).  Probable cause "requires more than mere suspicion."  *Id.*  However, it does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction."  *Adams v. Williams*, 407 U.S. 143, 149 (1972).  Rather, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  *Orsatti*, 71 F.3d at 483; *see also Schneyder v. Smith*, 653 F.3d 313, No. 10-2367, 2011 WL 3211504, at *7 (3d Cir. July 29, 2011).

> The "probable cause" requirement means that to prove false arrest, a plaintiff must establish that probable cause was lacking during the arrest and related detention.  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).  The question of probable cause is determined using an objective standard, based on the facts available at the time.  *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (citing *Beck v. Ohio*, 379 U.S. 89, 96 (1964)).  "Evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law."  *Id.* (citing *Henry v. United States*, 361 U.S. 98, 102 (1959)).  In other words, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction."  *Adams v. Williams*, 407 U.S. 143, 149, 92 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).  Therefore, the evidentiary standard for probable cause is significantly lower that the standard which is required for conviction.

*Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005).

If an arrest warrant has been issued, the warrant "does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000).  *Wilson* explained

> a plaintiff may succeed in a § 1983 action
> for false arrest made pursuant to a warrant
> if the plaintiff shows, by a preponderance of
> the evidence: (1) that the police officer
> "knowingly and deliberately, or with a
> reckless disregard for the truth, made false
> statements or omissions that create a
> falsehood in applying for a warrant"; and (2)
> that "such statements or omissions are
> material, or necessary to the finding of
> probable cause."

212 F.3d at 786-87 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).  Procedurally, "a court faced with a claim that an arrest warrant contains false assertions and omissions must first determine whether the officer made those false assertions or omissions either deliberately or with reckless disregard for their truth."  *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010).

"The Supreme Court has made clear that a mistakenly issued or executed warrant cannot provide probable cause for an arrest." *Berg v. County of Allegheny*, 219 F.3d 261, 270 (3d Cir. 2000) (citing *Arizona v. Evans*, 514 U.S. 1 (1995); *United States v. Hensley*, 469 U.S. 221 (1985); *Whiteley v. Warden*, 401 U.S. 560 (1971)).  Thus, when an arrest is made pursuant to an erroneously issued warrant, the facial validity of the warrant does not provide probable cause to arrest.  *Berg*, 219 F.3d at 270 (citing *Whiteley*,

401 U.S. 560).  In other words, police officers executing a warrant which has been issued without probable cause, though unaware of the defect in the warrant, do not have probable cause to arrest.  *Id.*

Because the probable cause standard is an objective one, the fact that an individual providing information in support of the warrant or arrest may have a bias against the person arrested does not negate probable cause, that person's report to the police is not rendered unreliable.  *See Mikhaeil v. Santos*, Civ. A. No. 2:10-CV-03876, 2011 WL 2429313, at *3 (D.N.J. June 13, 2011).  In *Mikhaeil*, the plaintiff alleged that state police officers acted upon information from an individual (Santos) with a bias against him and conspired with a county detective and a deputy attorney general to pressure the plaintiff to give evidence and plead guilty in an unrelated case.  *Id.*  The court noted that "[t]he possibility that the State Defendants were seeking to pressure Plaintiff in regard to unrelated litigation, even if proven, would not establish that the information in the State Department's possession, i.e., the information originating with Santos, amounts to less than probable cause.  Probable cause is an objective standard; the subjective motives of the police are irrelevant."  *Id.*

The issue of whether probable cause exists is generally a question for the jury but the issue may be decided by the court in an appropriate case.  *Groman*, 47 F.3d at 635 (citing *Dreary v. Three Un-Named Police Officers*, 746 F.2d 185, 191 (3d Cir. 1984)).

*Orsatti* presented such a case with the Third Circuit Court deciding that no rational jury could find that the police officers were objectively unreasonable in concluding, based on the information available to them at the time, they had probable cause to believe that the plaintiff's conduct constituted a crime.  *Orsatti*, 71 F.3d at 485; *see also Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) ("[A] district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to plaintiff, reasonably would not support a contrary factual finding.")

"[Section] 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion." *Berg*, 219 F.3d at 272.  As the Supreme Court explained in *Malley v. Briggs*, 475 U.S. 355 (1986), section 1983 anticipates that an individual will be "responsible for the natural consequences of his actions."  *Id.* at 344 n.7 (holding that a police officer who obtains an arrest warrant without probable cause is liable under § 1983 even though another officer made the actual arrest).  Thus, a government official's liability for causing an arrest is the same as for carrying it out.  *Berg*, 219 F.3d at 272 (citing *Gordon v. Degelmann*, 29 F.3d 295, 298 (7th Cir. 1994); *Kilbourn v. Thompson*, 103 U.S. 168, 200 (1880)).

Similarly, a lack of probable cause in charging Plaintiff is

12

an element of his Fourth Amendment malicious prosecution claim in

Count I of his Amended Complaint.  (Doc. 49 ¶ 8.)

> To prove malicious prosecution under section
> 1983 when the claim is under the Fourth Amendment,
> a plaintiff must show that: (1) the defendant
> initiated a criminal proceeding; (2) the criminal
> proceeding ended in his favor; (3) the defendant
> initiated the proceeding without probable cause;
> (4) the defendant acted maliciously or for a
> purpose other than brining the plaintiff to
> justice; and (5) the plaintiff suffered
> deprivation of liberty consistent with the concept
> of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007).  To prevail on

a malicious prosecution claim, the plaintiff must show that the

officer lacked probable cause to arrest him.[4]  *Id.* at 82; citing

*Wright*, 409 F.3d at 604.

Within this legal framework, whether there was probable cause

to arrest Plaintiff is the central question for both his false

arrest and malicious prosecution claims.  Thus, the disposition of

these claims at this stage of the proceedings depends upon whether

Plaintiff has proffered "sufficient factual matter . . . to state a

claim that relief is plausible on its face," *Iqbal*, 556 U.S. at ---

---

[4]    *Johnson* held that in the specific circumstances of the
case (which are unlike those presented here) finding that an agent
had probable cause to arrest on one charge, without finding he had
probable cause to arrest on other charges, did not defeat the
plaintiff's malicious prosecution claim on the other charges.  477
F.3d at 83-84.  *Johnson* noted the vitality of the *Wright* rule where
the circumstances of the arrest and prosecution are intertwined.
*Id.* at 82, n.9.  Further, the Third Circuit Court of Appeals
confirmed the precedential authority of the *Wright* rule in *Kossler
v. Crisanti*, 564 F.3d 181, 194 n.8 (3d Cir. 2009).

, 129 S. Ct. at 1949 (internal quotation omitted), specifically, whether Plaintiff has proffered sufficient evidence to state a plausible claim that he was arrested without probable cause.

In his Amended Complaint, Plaintiff claims that Defendant Walbert caused him to be arrested.  (Doc. 49 ¶ 10.)  He also alleges "that the defendants Walbert and Howard maliciously prosecuted him for unlawful reasons in violation of his 1st Amendment rights and without probable cause."  (Doc. 49 ¶ 8.)  He adds that "[p]robable cause cannot be created from political requests or from retaliatory misconduct based upon non-proper law enforcement considerations."  (Doc. 49 ¶ 9.)  Plaintiff states that a "prosecutor requires probable cause to effectuate a prosecution the lack thereof, as here, raising a jury question."  (Doc. 49 ¶ 12.)  The Amended Complaint also contains the following statement:

> In the case of Daniel Griffin charges against him were dismissed in part by a judicial response to a writ of habeas corpus and then by a judicial response after hearing all remaining evidence against him.  This is certainly probative of a likely lack of probable cause creating a jury question . . . .

(Doc. 49 ¶ 17.)

In his brief in opposition to Defendant Walbert's motion, Plaintiff sets out the following argument.

> The charge against plaintiff was impersonating a police officer, which is within 18 Pa. C.S. § 4912.  He was pulled over originally by a police officer for an apparent traffic violation of some sort, and , even in the Superior court

14

opinion upon which the Court relied in its October 7, 2011 memorandum, there is no mention or suggestion that he was trying to induce anyone to submit to any authority at that time, or to act in reliance on his being a police officer.  The fact there was no probable cause is suggested alone by the fact that Walbert did not make lodge [sic] any charges against him at the time of his arrests, and there was never any additional evidence adduced that he ever later showed false credentials or otherwise tried to create the impression in anyone that would cause them to submit to an authority he did not have, or to gain a benefit to the prejudice of the other.  There simply was no crime based alone upon the inventory of his automobile, and there was no other fact that there was any culpable behavior on his part.

These facts further inferentially support plaintiff's *factual* allegation that he *was told* that Walbert was carrying out an agenda over which he had no control.  This statement alone sufficiently establishes a lack of probable cause for pleading purposes (i.e., why tell him that if he had a valid arrest to make), and, when coupled with the fact that an arrest was not made earlier, an inferential admission that there was no probable cause on the date of the stop, it is clear that plaintiff has alleged an arrest and prosecution without probable [sic].

(Doc. 57 at 10-11.)

While Plaintiff is correct that the central question before us is whether he has pled facts to show that the defendant lacked probable cause, and that the issue of probable cause is generally a jury question (Doc. 57 at 10), these general principles do not relieve Plaintiff of his obligation to produce sufficient factual matter at this stage of proceedings.  Because Plaintiff was arrested pursuant to an affidavit, for his claim to be plausible, he must produce sufficient factual matter to show that the affiant,

15

Defendant Walbert, "(1) knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for [the] warrant"; and (2) that such statements or omissions [were] material, or necessary to the finding of probable cause." *Wilson*, 212 F.3d 781 (internal quotation omitted) (plaintiff needed to proffer evidence that affiant recklessly disregarded the truth in his warrant application, *and* that a warrant application based on what affiant should have told the judge would have *lacked* probable cause). Although Plaintiff talks about Defendant Walbert's allegedly improper motive and other facts which he views as indicative of a lack of probable cause, he does not present any facts which go to the dispositive inquiry: Plaintiff does not aver that Defendant Walbert "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for [the] warrant." *Id.* Plaintiff was advised of the need for such a showing in the Court's October 7, 2011, Memorandum and Order (Doc. 42 at 22), yet he has not pointed to any falsehood or omission in the affidavit that led to the issuance of the warrant for his arrest.[5]

---

[5]  Based on the factual background of this case and the number of associated proceedings, we assume that Plaintiff has, or could have, knowledge of the contents of the affidavit at issue. Furthermore, despite being informed of the centrality of this matter, Plaintiff has not advised the Court otherwise.

Here, Plaintiff's factual assertions, taken as true, relate to his innocence or guilt of the crimes charged and the motivation of Defendant Walbert.  (*See*, *e.g.*, Doc. 57 at 10-11.)  Because the probable cause inquiry is objective (the subjective motives of the police are irrelevant) and because the evidentiary standard differs between what is necessary for a finding of probable cause and ultimate guilt of the charged offense, the factual assertions to which Plaintiff points do not go to the appropriate probable cause inquiry.  Therefore, Plaintiff has not satisfied his burden of providing some facts that probable cause was lacking in this case. *See Barna*, 42 F.3d at 819; *Mikhaeil*, 2011 WL 2429313, at *3. Plaintiff's well-pleaded facts may point to unseemly behavior on the part of some public officials and questionable motivation for actions taken, but, within the relevant legal framework, they do not even create an inference of misconduct which would entitle the Plaintiff to relief.  Therefore, Plaintiff's claims requiring a showing of a lack of probable cause--his claims for false arrest and malicious prosecution in Count I--are properly dismissed.[6] Because Plaintiff has been granted leave to amend and has failed to rectify the previously identified shortcoming, Count I will now be dismissed with prejudice.

---

[6]  We emphasize that our conclusion is not that probable cause existed for Plaintiff's arrest; rather, it is only that, within the relevant legal framework, Plaintiff has not proffered any evidence that it did not.

**3.     Prosecutorial Immunity**

Defendant Howard argues that he is entitled to absolute prosecutorial immunity because all allegations against him contained in Plaintiff's Amended Complaint fall within his traditional function as a prosecutor.  (Doc. 54 at 6.)  Plaintiff argues that Defendant would at most be entitled to qualified immunity because he was advising Defendant Walbert to bring charges, but, in fact, he is not entitled to such immunity because he violated clearly established rights.  (Doc. 56 at 4-5.)

The only claim raised against Defendant Howard in Plaintiff's Amended Complaint is contained in Count II alleging malicious prosecution.  (Doc. 49 ¶¶ 8, 12, 16.)  Based on our determination that Plaintiff's claims against Defendants Walbert and Howard in Count I are properly dismissed because he has failed to state a Fourth Amendment claim, we need not decide the immunity issue.  *See Wright*, 409 F.3d at 600.

### III. Conclusion

For the reasons discussed above, Motion of Defendant Russell Walbert to Dismiss (Doc. 51), and Defendant Berks County Assistant District Attorney Howard's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 53) are granted.  With this decision, Count I of Plaintiff's Complaint is dismissed with prejudice.  As this is the only claim remaining against Defendants Walbert and Howard, they are dismissed from the

action.   Count II of Plaintiff's Amended Complaint against

Defendant Harding alleging a Fourth Amendment excessive force claim

goes forward.   An appropriate Order follows.




                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Court
DATED: January 17, 2012